**Joe MARVULLO, Plaintiff,**

v.

**GRUNER & JAHR, Stern Magazine Corporation, Defendants.**

**No. 98 Civ. 5000 (RLC).**

United States District Court, S.D. New York.

June 19, 2000.

---

Weingrad & Weingrad, L.L.P., New York City (Stephen A. Weingrad, of counsel), for Plaintiff.

Walter, Conston, Alexander & Green, P.C., New York City (Gregory F. Hauser, of counsel), for Defendant Stern Magazine Corp.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant Stern Magazine Corporation moves to dismiss the amended complaint of plaintiff Joe Marvullo pursuant to Rule 12(b)(6), F.R. Civ. P., for failure to state a claim upon which relief can be granted. Plaintiff moves for leave to file a seconded amended complaint pursuant to Rule 15(a), F.R. Civ. P.

### BACKGROUND [1]

Plaintiff Marvullo is a professional photographer who enjoyed a "special relation-

---

**1.** Since for the purpose of resolving both motions the court must determine whether the amended complaint and proposed second amended complaint state a claim upon which relief can be granted, the court accepts as

ship" with the "White House Press and Photo office," and in particular with Bob McNeely, Director of Photography at the White House. (Am.Compl.¶ 42.) Defendant Gruner & Jahr AG & Co. ("Gruner & Jahr") is a German corporation which publishes the German-language periodical Stern Magazine. (*Id.* ¶ 28, Ex. C.) Stern Magazine Corporation ("Stern") is a subsidiary of Gruner & Jahr and a domestic corporation doing business in New York. (*Id.* ¶¶ 2, 6.)

In March, 1997, Marvullo approached Stern with an offer of a "story on President Clinton or the White House photographers," claiming that he had "exclusive access" to the White House. (*Id.* Ex. D.) Over the course of the next several months, he negotiated an agreement to provide Stern with the "editorial use of [a] feature article on The White House Photo Unit in one issue of Stern Magazine" for a fee of $3,000.00 plus expenses, as evidenced by plaintiff's two invoices dated November 19, 1997. (*Id.* Ex. G.) The agreement licensed Stern's use of plaintiff's "black/white photo of Bob McNeely photographing President Clinton in [a] Cabinet Room meeting" ("McNeely photograph"); approximately 50 or 60 photographs taken by members of the White House Photo Unit; some "text by Joe Marvullo"; and "caption material for [the] photographs." (*Id.* Ex. G, K.) The first of plaintiff's invoices stated that his fee was specifically in exchange for his "research, photo editing and text," as well as captions, but not for Stern's use of any photographs taken by the White House Photo Unit. (*Id.* Ex. G.) In a subsequent letter to Stern dated November 20, 1997, in which plaintiff wrote "[h]ere is the billing for 'The White House Project'", he added that "the copyright and credit should read (c) Photographer's name/The White House [and any] photos by Joe Marvullo that might be used should read (c) Joe Marvullo." (*Id.* Ex. H.) Prior to the invoices,

Stern had agreed, in a letter dated August 17, 1997, that it would submit the article and accompanying photographs to plaintiff for his approval prior to publication. (*Id.* ¶ 55, Ex. F.) On December 5, 1997, Stern issued a check to plaintiff for $3,106.95 in exchange for the licensed work and his services. (*Id.* Ex. I.)

In or about January 1998, Gruner & Jahr published an article in Stern Magazine on President Clinton using eight of the aforementioned photographs, including a cropped version of the McNeely photograph. (*Id.* ¶ 11, Ex. C.) The article was never submitted to plaintiff for his prior approval. (*Id.* ¶ 55.) It did not credit Marvullo or any of the individual White House photographers as provided for in the licensing agreement. (*Id.* ¶¶ 52–54.) Instead, it credited "Bob McNeely/The White House" for each of the published photographs. (*Id.* Ex. C, J.) Moreover, the photographs did not appear in a positive article on the White House Photo Unit, as agreed to by the parties during previous conversations and correspondence, (*see, e.g., id.* ¶ 43), but rather in a negative story on President Clinton's political and personal troubles; the story led, in fact, with a graphic sexual discussion of the evidence and legal issues raised in Paula Corbin Jones's sexual harassment lawsuit against the President, (*Id.* Ex. C, J). Plaintiff's relationship with the White House, as well as his general professional reputation, have been impaired by the publication of the eight photographs alongside of a salacious and unflattering story about the President. (*Id.* at 34, 65.)

Consequently, plaintiff brought suit against defendants alleging federal claims of copyright infringement under the Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. § 101, et seq., (count I), and unfair competition under the Lanham Trade–Mark Act ("Lanham Act"), 15 U.S.C.

true all factual allegations in both amended complaints, draws all reasonable inferences in favor of plaintiff and "consider[s] documents attached to or incorporated by reference in the complaint." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). *See also Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996).

§ 1125(a), (count IV). He also asserted state law claims for conversion (count II), fraud (count III), negligent and common law unfair competition (count V), and tortious misappropriation of good will (count VI).

## DISCUSSION

### I.

In response to arguments raised in defendant's motion to dismiss, plaintiff moves for leave to file a second amended complaint.[2] (*See* Pl's. Mem. Am. Compl. at 1.)[3] "Leave to amend, though usually freely given, may be properly denied where the proposed amendment would be legally insufficient on its face or would fail to state a claim." *Fisher v. Internal Revenue Service*, 1985 WL 1692, at *1 (S.D.N.Y. June 19, 1985) (Carter, J.). "Where it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993). *See also McNally v. Yarnall*, 764 F.Supp. 853, 855 (S.D.N.Y. 1991) (Sweet, J.) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis."). The court may dismiss a complaint for failure to state a claim only if it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S.

41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### A.

■ Count I of the proposed second amended complaint, alleging copyright infringement, is legally insufficient. First, plaintiff attempts to plead direct copyright infringement by alleging that the McNeely photograph "was published by the Defendants beyond the scope and authority of the limited license." (Second Am. Compl. ¶ 9.) The court recognizes that although generally "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement," *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), a licensor may bring a claim for infringement where a licensee uses copyrighted material beyond the scope of a license, *see Marshall v. New Kids on the Block Partnership*, 780 F.Supp. 1005, 1008–10 (S.D.N.Y.1991) (Patterson, J.) ("Case law in this Circuit indicates that a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license."). Nonetheless, plaintiff's unadorned allegation in paragraph nine that defendants have published the McNeely photograph "beyond the scope ... of the limited license," absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss. "A complaint which consists of conclusory allegations unsupported by factual asser-

---

**2.** Plaintiff has actually filed two pleadings with the court entitled "Proposed 2nd Amended Complaint." The first was filed on February 16, 1999, unaccompanied by a motion to amend the complaint. The second was filed on March 24, 1999, as an exhibit to plaintiff's current Rule 15(a) motion. The two pleadings appear to be identical except (continued on next page ... ) that the earlier version lists Gruner & Jahr USA Group, Inc. as a third defendant, while the later version lists only Gruner & Jahr AG and Co., and Stern Magazine Corp., as defendants. The court disregards the earlier version because it was filed without leave of court or written consent of

the adverse parties as required by Rule 15(a). Therefore, contrary to plaintiff's statement that "[t]here are two Defendants but three in the proposed 2nd amended complaint," (*Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss* at 2, dated Feb. 9, 1999), Gruner & Jahr USA Group, Inc. is not a party to this action.

**3.** "Pl's. Mem. Am. Compl." refers to *Plaintiff's Memorandum of Law In Support of the Motion for an Order Permitting the Plaintiff to File a Second Amended Complaint*, dated March 22, 1999.

tions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir.1996). *See also Duncan v. AT & T Communications, Inc.,* 668 F.Supp. 232, 234 (S.D.N.Y.1987) (Carter, J.) (stating "individual allegations . . . may be so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains . . . . and, as a matter of law, [are] insufficient to state a claim.").[4]

■ Second, plaintiff alleges that defendants "contributorily infringed said copyright by alternatively acquiring, publishing, using and placing upon the general market . . . a photographic image which was copied largely from plaintiff's copyrighted photographic image (Exhibit A)." (Second Am. Compl. ¶ 11.) As a threshold matter, to adequately plead contributory copyright infringement plaintiff must initially plead a direct infringement. *See R & R Recreation Products Inc. v. Joan Cook Inc.,* 25 U.S.P.Q.2d (BNA) 1781, 1784 (S.D.N.Y. Apr.14, 1992) (Martin, J.) (" '[W]ithout the fact or intention of a'

direct infringement there is no cause of action for contributory [copyright] infringement." (quoting *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 526, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972))). *See generally Subafilms, Ltd. v. MGM–Pathe Communications Co.,* 24 F.3d 1088, 1092 (9th Cir.1994) (collecting cases); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971) (requiring contributory infringer to have participated in infringing conduct of another). Although the second amended complaint is not a model of clarity, count I appears to allege that Stern is liable for contributory copyright infringement because it procured the McNeely photograph which defendant Gruner & Jahr later published in violation of plaintiff's copyright. (Second Am. Compl. ¶ 11.) Since the second amended complaint fails to adequately plead a direct copyright infringement, plaintiff's contributory infringement claim would fail.

■ Even assuming arguendo that plaintiff had sufficiently alleged a direct

---

4. In ruling that plaintiff's claim for direct copyright infringement is legally insufficient, the court is mindful that Rule 8 embodies a liberal pleading standard and that, on a Rule 12(b)(6) motion, the court must draw all reasonable inferences in favor of plaintiff. *See, e.g., Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996). The most liberal reading of the second amended complaint, as well as of the amended complaint, which pieced together the jumble of factual allegations in each of plaintiff's six federal and state law counts, suggests that plaintiff might have adequate grounds upon which to state a direct copyright infringement claim. For example, in count III of the second amended complaint, which seeks damages for fraud, plaintiff seems to imply that Gruner & Jahr published the McNeely photograph beyond the scope of the license by including it with a story not on the Photo Unit, as he claims the parties initially agreed, but on President Clinton's troubled (continued on next page . . . ) second term. (Second Am. Compl. ¶ 51) ("The article in which the aforesaid photographs appeared did not accompany a story line about the White House Photo Unit . . . but was a personal story on President Clinton, which featured his genitalia in the first four paragraphs, and ended with the last line referring to a sex scandal.").

Regardless, this allegation is neither made, nor incorporated by reference, in count I, as otherwise required by Rule 10(c), F.R. Civ. P. ("Statements in a pleading may be adopted by reference in a different part of the same pleading."). The court is thus barred from considering plaintiff's unincorporated factual allegations made in subsequent counts as a basis for his copyright infringement claim in count I. *See Arce v. Walker,* 139 F.3d 329, 336 n. 7 (2d Cir.1998) (declining to consider facts "alleged in the complaint exclusively with respect to [plaintiff's] court access claim . . . [which] were not incorporated or realleged in his due process claim"); *Jones Apparel Group, Inc. v. Piccone,* 1994 WL 260767, at *3 (S.D.N.Y. June 8, 1994) (McKenna, J.) (stating Rule 10(c) prohibits court from inferring elements of claim from other sections of pleading absent explicit incorporation); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1326, at 759–60 (2d ed. 1990) ("Rule 10(c) apparently authorizes only an express incorporation" and even "references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.").

**230**

infringement by Gruner & Jahr, in order then to plead contributory infringement against Stern plaintiff must have alleged that Stern had actual or constructive knowledge of, and participated in, Gruner & Jahr's infringing conduct. *See Ez–Tixz, Inc. v. Hit–Tix, Inc.*, 919 F.Supp. 728, 732 (S.D.N.Y.1996) (Koeltl, J.) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." (footnote omitted) (quoting *Gershwin Publishing Corp.*, 443 F.2d at 1162)). Moreover, the

> [p]articipation sufficient to establish a claim of contributory copyright infringement may not consist of merely providing the means to accomplish an infringing activity. In order for liability to be imposed, the alleged contributory infringer must make more than a mere quantitative contribution to the primary infringement. Participation in the infringement must be substantial. The authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer.

*ZVI Livnat v. Shai Bar Lavi*, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (Sweet, J.) (internal quotation marks and citations omitted).

Count I fails to plead that Stern had any knowledge of Gruner & Jahr's infringing conduct. It also fails to allege any facts from which a trier of fact could conclude that Stern induced, caused or materially

contributed to Gruner & Jahr's conduct. Failure to plead these essential elements would warrant dismissal of plaintiff's contributory copyright infringement claim against Stern.[5]

The aforementioned allegations of direct and contributory copyright infringement would also be dismissed for failure to satisfy the minimal pleading standards of Rule 8, F.R. Civ. P.[6] Rule 8(a)(2) has been construed to require a plaintiff to plead with specificity the acts by which a defendant has committed copyright infringement. A "properly plead [sic] copyright infringement claim must allege ... by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y.1992) (Conner, J.). It must set out the "particular infringing acts ... with some specificity. Broad, sweeping allegations of infringement do not comply with Rule 8." *Id.* at 36 n. 3 (citation omitted).

Aside from the specific allegation that defendant Gruner & Jahr violated plaintiff's copyright by unauthorizedly cropping the McNeely photograph, (Second Am. Compl. ¶ 12), count I fails to allege with specificity any acts by which either defendant directly or contributorily violated plaintiff's copyright. The mere allegation that Stern procured a license to use a copyrighted photograph, which Gruner & Jahr later published beyond the scope of that license, is too broad and sweeping to satisfy Rule 8.[7] *See Reid v. American Society of Composers, Authors and Publishers*, 1994 WL 3409, at *1–2 (S.D.N.Y. Jan. 5,

---

5. Count I also fails to state a claim for contributory copyright infringement against Gruner & Jahr; nowhere does it allege that Gruner & Jahr had knowledge of, or participated in, the infringing conduct of another.

6. The requirements of Rule 8, F.R. Civ. P., have been made applicable to copyright actions despite Rule 81(a)(1), F.R. Civ. P., which states that the Federal Rules of Civil Procedure do not apply to copyright actions under Title 17, U.S.C. *See Foster v. WNYC–TV*, 1989 WL 146277 at 4 (S.D.N.Y. Nov. 20, 1989) (Keenan, J.).

7. Moreover, plaintiff's allegations that his photograph was "contributorily infringed by the separate but coordinated acts of all defendants," which appears in the beginning of the proposed second amended complaint in a separate section entitled "Summary of Allegations", (Second Am. Compl. ¶ 4), and that "defendants have been cooperating with each other in the respective publishing" of the McNeely photograph, (*id.* ¶ 14), are equally insufficient.

1994) (Kram, J.) (dismissing claim pursuant to Rule 8(a)(2) where plaintiff failed to allege by what acts defendant infringed copyright). *Cf. Tom Kelley Studios Inc. v. International Collectors Society, Inc.,* 1997 WL 598461, at *1 (S.D.N.Y. Sept. 25, 1997) (Knapp, J.) (granting motion for a more definite statement, pursuant to Rule 12(e), F.R. Civ. P., where complaint failed to allege specific acts of copyright infringement in accordance with Rule 8).

The allegations in count I are similar to those allegations dismissed in *Lindsay v. Wrecked and Abandoned Vessel R.M.S. TITANIC,* 1999 WL 816163, at *4 (S.D.N.Y. Oct. 13, 1999) (Baer, J.). The plaintiff in *Lindsay,* an independent documentary filmmaker, sued several defendants, including Suarez Corporation Industries, Inc. ("SCI"), for allegedly infringing his copyright of an underwater film of the wreck of the Titanic. The complaint merely alleged against SCI that it "did knowingly and willfully infringe upon Plaintiff's copyright ... by unlawfully purchasing and/or otherwise obtaining copies" of the documentary film, and that it "has and will 'exploit and profit from'" the film. *Id.* The court dismissed plaintiff's claim against SCI finding the excerpted allegations too "vague and conclusory" to satisfy Rule 8. *Id.* Plaintiff's allegations in the present case are equally vague and conclusory.

Finally, as to count I, the second amended complaint seeks to correct plaintiff's mistaken labeling of the cropped McNeely photograph as Exhibit A, when instead Exhibit A should have been a copy of the uncropped original photograph. This, by itself, is unobjectionable. However, since plaintiff's underlying claim for copyright infringement based on the cropping of the photograph will not survive a motion to dismiss, granting leave to amend would be futile and unproductive.

In *Gilliam v. American Broadcasting Companies, Inc.,* 538 F.2d 14, 21 (2d Cir. 1976), the Second Circuit addressed whether the unauthorized editing of a licensed work could constitute copyright infringement. In *Gilliam,* the British comedy group Monty Python sought a preliminary injunction restraining the American Broadcasting Companies, Inc. ("ABC") from broadcasting edited versions of three of the group's television performances. ABC had licensed the transmission of the performances from the British Broadcasting Corporation ("BBC"), which had acquired certain rights in the performances. The Second Circuit ruled for plaintiffs, holding that ABC's "unauthorized editing of the underlying work, if proven, would constitute an infringement of the copyright in that work similar to any other use of a work that exceeded the license granted by the proprietor of the copyright." *Id.* In particular, the circuit court found that ABC's substantial editing of Monty Python's copyrighted program, "i.e., approximately 27 per cent of the original program was omitted," along with the existence of contractual provisions which limited the BBC's right to edit programs once recorded, indicated that there was a likelihood ABC's editing constituted copyright infringement. *Id.* at 19.

Importantly, however, the circuit court noted that its holding did not signal acceptance of the "assertion that any editing whatsoever would constitute infringement." *Id.* at 23. It stated that "[c]ourts have recognized that licensees are entitled to some small degree of latitude in arranging the licensed work for presentation to the public in a manner consistent with the licensee's style or standards." *Id.* (footnote omitted). In support of this proposition, the court cited two cases as establishing a limited right to edit, *Stratchborneo v. Arc Music Corp.,* 357 F.Supp. 1393, 1405 (S.D.N.Y.1973) (Brieant, J.) ("A licensee has the right so to alter a copyrighted work to suit his own style and interpretation."), and *Preminger v. Columbia Pictures Corp.,* 49 Misc.2d 363, 267 N.Y.S.2d 594, 598–600 (Sup.Ct.1966) (holding television stations licensed to broadcast a motion picture may make minor cuts and edits pursuant to industry custom and

practice, absent specific contractual provisions to the contrary).

█ In the present case, defendant's cropping of the McNeely photograph is so minor and insubstantial that as a matter of law it falls within that degree of latitude afforded licensees to alter a copyrighted work to suit their style or the medium in which the work is presented. Moreover, plaintiff has presented no specific contractual provision prohibiting defendant from making minor edits or alterations to his photograph to suit the format of defendant's publication.

Count I of the second amended complaint, alleging copyright infringement, is insufficient as a matter of law.

### B.

Plaintiff's remaining federal claim is also legally insufficient. Count IV of the second amended complaint alleges unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[8] It asserts that "defendants have wrongfully infringed plaintiff's exclusive copyrights to his distinctive photographic image, *Exhibit A*, through the rendering of a false designation of origin of said photographic image." (Second Am. Compl. ¶ 66) (emphasis in original). Plaintiff fails to allege or incorporate any facts in count IV in support of his claim. For this reason alone, it would be dismissed.

█ Even if the court assumed arguendo that plaintiff's Lanham Act claim is based on his earlier allegation in count III for fraud, that defendants "did not give copyright and photo credit to plaintiff for

his image used in the article," (Second Am. Compl. ¶ 52), it would still be inadequate. "[A]s a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act." *Lipton v. Nature Company,* 71 F.3d 464, 473 (2d Cir.1995).

> For the Lanham Act to apply to a copyright-based claim, an aggrieved author must show more than a violation of the author's copyright-protected right to credit and profit from a creation. The author must make a greater showing that the designation of origin was false, was harmful, and stemmed from some affirmative act whereby [defendant] falsely represented itself as the owner.

*Weber v. Geffen Records, Inc.,* 63 F.Supp.2d 458, 463 (S.D.N.Y.1999) (Motley, J.) (internal quotation marks and citations omitted).

Given the most liberal reading of the second amended complaint, plaintiff's Lanham Act claim is based on no more than an alleged copyright violation and is impermissibly duplicative of his claim for relief under the Copyright Act. Moreover, plaintiff does not allege that Gruner & Jahr falsely represented itself as the creator of the photographs or the owner of their copyrights; rather he asserts that Gruner & Jahr wrongly credited White House photographer Bob McNeely for all of the photographs. As in *Weber,* plaintiff in the present case fails to allege "the requisite affirmative action of falsely claiming originality beyond that implicit in any allegedly false copyright" and his claim would be

8. The caption to count IV confusingly refers to plaintiff's § 43(a) claim as arising under 15 U.S.C. §§ 1125(a) and 1114(1). (Second Am. Compl. p. 15.) 15 U.S.C. § 1114 actually corresponds to § 32 of the Lanham Act, which provides a cause of action for trademark infringement, as opposed to § 43(a), which addresses unfair competition. Although the elements of both causes of action are substantially similar, " § 32 applies only to registered trademarks", whereas " § 43(a) ... claims may be brought to enforce unregistered trademarks." *Monsanto Co. v. Haskel Trading, Inc.,* 13 F.Supp.2d 349, 355 n. 3

(E.D.N.Y.1998) (quotation marks omitted) (quoting *Gucci America, Inc. v. Action Activewear, Inc.,* 759 F.Supp. 1060, 1063 n. 3 (S.D.N.Y.1991) (Leisure, J.)). *See also Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir.1996) (stating that in order to plead a claim for trademark infringement pursuant to § 34(a) plaintiff "must show that [he] has a valid mark that is entitled to protection."). Count IV fails to allege that plaintiff has a valid trademark and any suggestion that he has a claim pursuant to § 1114(1) is frivolous.

dismissed. *Weber,* 63 F.Supp.2d at 464. *See also Armstrong v. Virgin Records, Ltd.,* 2000 WL 351220, at *4 (S.D.N.Y. Apr. 3, 2000) (Sweet, J.) (dismissing Lanham Act claim and stating "[a]ny claim of false originality on the part of the defendants in this action does not venture beyond that implicit in any allegedly false copyright.").

For the aforementioned reasons, plaintiff's motion for leave to file a second amended complaint is denied.[9]

## II.

### A.

Defendant moves to dismiss the amended complaint pursuant to Rule 12(b)(6). Defendant argues initially that the court lacks subject matter jurisdiction over plaintiff's copyright infringement claim because the publication of the McNeely photograph, allegedly in violation of the terms of the license, amounts, at best, to merely a state law breach of contract claim. Since the court must assume jurisdiction over plaintiff's claims before deciding whether to dismiss them on the merits, *see Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir. 1990) (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)), the court will address defendant's jurisdictional argument before deciding whether to dismiss the complaint pursuant to Rule 12(b)(6).[10]

■ The Second Circuit recently reiterated that the test for determining subject matter jurisdiction over "claims of [copyright] infringement arising from, or in the context of, an alleged contractual breach" is that articulated by Judge Friendly in *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964). *Bassett v. Mashantucket Pe-*

*quot Tribe,* 204 F.3d 343, 355 (2d Cir.2000) (abrogating three-step test of *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926 (2d Cir.1992)). In *T.B. Harms,* the circuit court held that "an action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement ... or asserts a claim requiring construction of the Act." *T.B. Harms Co.,* 339 F.2d at 828 (citations omitted). *See also Bassett,* 204 F.3d at 349 ("[I]f the complaint alleges copyright infringement or seeks an injunction under the Copyright Act, under *T.B. Harms* the federal court has jurisdiction.").

Count I of the amended complaint alleges copyright infringement and seeks injunctive relief and attorneys' fees under the Copyright Act. (Am.Compl.¶ 16.) The court thereby has jurisdiction over plaintiff's copyright claim and defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

### B.

Defendant moves to dismiss each of plaintiff's six claims for failure to state a claim upon which relief can be granted.

Plaintiff's allegations of direct copyright infringement in the amended complaint suffer from the same fatal defects, including of vagueness and conclusoriness, as his similarly worded allegations in the second amended complaint. Moreover, the amended complaint's allegation that defendants directly infringed plaintiff's copyright by merely publishing a copy of the McNeely photograph, (Am.Compl.¶ 11), is legally insufficient because it is contradicted by plaintiff's allegation that he licensed defendant's use of the photograph, (Am. Compl.Ex. G).[11] *See International Audio-*

---

**9.** For the jurisdictional reasons stated *infra* page 234, the court declines to address plaintiff's state law claims at this time.

**10.** Since defendant has challenged the court's subject matter jurisdiction, the court will consider this aspect of defendant's Rule 12(b)(6) motion as brought pursuant to Rule 12(b)(1), F.R. Civ. P. *Cf. Angotti v. Kenyon & Kenyon,* 929 F.Supp. 651, 653 (S.D.N.Y.1996) (Koeltl,

J.) (construing motion mistakenly made pursuant to Rule 12(b)(1) as properly made pursuant to Rule 12(b)(6)).

**11.** Plaintiff's claim in the amended complaint that defendant violated his copyright by cropping the McNeely photograph, (Am. Compl.¶ 12), is essentially identical to his similar claim in the second amended complaint, (Second Am. Compl. ¶ 12), and it must be

*text Network, Inc. v. American Telephone and Telegraph Co.,* 62 F.3d 69, 71 (2d Cir.1995) (holding that on a motion to dismiss the terms of an agreement integral to a complaint may be considered in deciding whether plaintiff can prove any set of facts entitling him to relief). Plaintiff's claim for copyright infringement in count I of the amended complaint is dismissed.

■ The court also dismisses plaintiff's Lanham Act claim, asserted in count IV of the amended complaint, for the reasons stated *supra* pages 232–33. Since plaintiff's federal claims for copyright infringement and unfair competition are dismissed, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Fleury v. Bloom FCA!, Inc.,* 1995 WL 489448, at *9 (S.D.N.Y. Aug. 15, 1995) (Carter, J.) ("A district court may refuse to exercise supplemental jurisdiction where the federal claims on which the jurisdiction was based have been dismissed.").[12]

## CONCLUSION

Plaintiff's motion pursuant to Rule 15(a) for leave to file a proposed second amended complaint is denied. Defendant's motion to dismiss the amended complaint pursuant to Rule 12(b)(6) is granted, but only with prejudice as to count IV of the amended complaint for violation of the Lanham Act, 15 U.S.C. § 1125(a). Since the deficiencies in count I of the amended complaint may be curable, see *supra* page —— n. 4, plaintiff is granted thirty days within which to replead his federal copyright infringement and state law claims. *See DiMaggio v. International Sports Ltd.,* 1998 WL 549690, at *3 (S.D.N.Y.

Aug. 31, 1998) (Baer, J.) (dismissing copyright infringement claim for failure to comply with Rule 8 but granting leave to replead because "many of [the] deficiencies may be curable"). *Cf. S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Building 1 Housing Development Fund Co. Inc.,* 608 F.2d 28, 42 (2d Cir.1979) (stating that "if the plaintiff has at least colorable grounds for relief," justice requires that leave to amend a complaint pursuant to Rule 15(a) be granted absent a sound contravening reason). Defendants may, of course, renew their objections to plaintiff's claims at the appropriate time.

**IT IS SO ORDERED.**

---

missed for the reasons discussed *supra* pages 232–33.

12. Although the amended complaint asserts that the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as well as federal question jurisdiction pursuant to 28 U.S.C. § 1331, this is patently incorrect. The amended complaint alleges that plaintiff is a citizen of New York and that defendant Stern's principal place of business is in New York, (Am.Compl.¶¶ 2,3), thereby destroying

complete diversity. Even if plaintiff is no longer a resident of New York, (*see* Second Am. Compl. ¶ 5), "[d]iversity of citizenship is measured at the time the lawsuit is filed .... [and a] subsequent change [of residence] does not affect jurisdiction." 1 Michael C. Silberberg, Civil Practice in the Southern District of New York § 9.07, at 9–20 (2d ed.1999) (footnotes omitted). *See also United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp.,* 907 F.Supp. 663, 667 (S.D.N.Y.1995) (Scheindlin, J.).